IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JESSICA POULIN and RACHEL HAIRSTON, Individually and on Behalf of All Other Persons Similarly Situated, | ) | |
| Plaintiffs, | ) | 1:26-cv-2225 (LMB/IDD) |
| v. | ) | |
| INOVA HEALTH SERVICES, | ) | |
| Defendant. | ) | |

# ORDER

This is an action brought under both the Fair Labor Standards Act of 1938 ("FLSA") and the Virginia equivalent laws (the Virginia Overtime Wage Act ("VOWA"), Va. Code Ann. § 40.1-29.2, and the Virginia Wage Payment Act ("VWPA"), Va. Code Ann. § 40.1-29), by Jessica Poulin, Rachel Hairston, and Stephanie Lawrence (collectively, "plaintiffs") on behalf of themselves and others similarly situated, against their employer, defendant Inova Health Services, Inc. ("defendant" or "Inova"). Defendant has filed a Motion to Dismiss, arguing that plaintiffs cannot bring their VOWA and VWPA claims (Counts II and III) as Federal Rule of Civil Procedure 23 ("Rule 23") class actions. [Dkt. No. 7]. For the reasons explained below, defendant's Motion to Dismiss will be denied and plaintiffs' class claims may proceed.

## I.

The following background is adapted from the underlying Complaint. Defendant Inova employs over 26,000 individuals in Virginia and generated $7.2 billion in operating revenue in 2025. [Dkt. No. 1] at ¶¶ 10-11. Plaintiff Jessica Poulin ("Poulin") is a resident of Fairfax County

and has been an employee of Inova since 2018. Id. ¶¶ 8-9, 21.[1] Poulin has been employed by Inova as an "interventional radiology technologist." Id. ¶ 19. In that position, her "primary job responsibilities involve preparing patients for and conducting diagnostic X-ray procedures." Id. Poulin was hired as an hourly, nonexempt employee, and is owed overtime rates when she works over 40 hours in a workweek. Id. ¶ 20.

According to the Complaint, during the relevant period, Poulin and the other proposed class members were "required to clock in and out at the beginning and end of their shifts at Defendant's locations to record their hours worked"; however, they were not paid for "all of their time worked." Id. ¶ 25-26. Instead, "Defendant paid [the class members] based on post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include all compensable work required by, performed for, and to the benefit of Defendant." Id. ¶ 26.

Specifically, the Complaint alleges that Inova maintained a policy "in which employees [were] expected to clock in and start working up to seven (7) minutes early . . . rounded up in favor of Defendant," and were "instructed not to clock in more than seven (7) minutes early because the time would then be rounded in the employee's favor, triggering additional compensation." Id. ¶ 27. As a result, Poulin "routinely would clock in approximately 3–7 minutes early prior to her scheduled shift start of 7:30am during a typical workweek in order to avoid discipline that would result from clocking in even one minute late." Id. ¶ 29. Once she clocked in, she would "immediately begin working, which typically involved looking up the first patient of the day through a computer terminal and beginning preparations for that patient, such as ensuring the room was stocked with the requisite supplies." Id. ¶ 30. Similarly, Poulin would

[1] Plaintiffs Hairston and Lawrence joined this litigation on September 21, 2026, and November 3, 2026, respectively, and are not described in the Complaint. [Dkt. No. 19].

regularly work between three and seven minutes after the end of her shift time but would not be compensated for those extra minutes. Id. ¶ 31. During that post-shift period, Poulin would "finish[] up paperwork for the patient and transmit[] images taken from X-Ray scans." Id. ¶ 32.

Because of the discrepancy between the hours worked and the hours paid, the Complaint alleges that Poulin and the other purported class members were underpaid both for "straight time" paid at their regular hourly rate and overtime when they worked more than 40 hours in a given week, id. ¶ 34, in violation of "Department of Labor regulations which require both that employees' time be rounded 'to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour'" and that the rounding practice "'not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked,'" id. ¶ 39 (quoting 29 C.F.R. § 785.48(b)).

II.

On July 23, 2026, Poulin filed this suit. Poulin brought Count I on behalf of an opt-in FLSA collective that includes:

> All current and former non-exempt (including but not limited to commission based, production-based, hourly, and salaried) employees of Defendant during the period of three years preceding the commencement of this action to the date of judgement in this action who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay for all hours worked in excess of forty (40) hours per workweek by virtue of having their time edited and/or rounded.

[Dkt. No. 1] at ¶ 55. Poulin brought Counts II and III on behalf of an opt-out class of VOWA and VWPA claimants, defined as:

> All current and former non-exempt (including but not limited to commission based, production-based, hourly, and salaried) employees of Defendant in the State of Virginia during the period from three years prior to filing the complaint to the date of judgement in this action who were not paid for all hours worked by virtue of having their time rounded and/or edited.

[Dkt. No. 1] at ¶ 61. In the alternative, Poulin brought Counts II and III as collective actions consistent with the collective action procedures of the FLSA. Id. at ¶ 62.

On August 31, 2026, defendant moved to dismiss the class claims asserted in Counts II and III for failure to state a claim. [Dkt. No. 8] at 3.[2] After oral argument, defendant's Motion to Dismiss was taken under advisement.

III.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations sufficient to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A court must accept well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor, but it need not accept legal conclusions, conclusory allegations, or unreasonable inferences. Iqbal, 556 U.S. at 678-79. At the motion to dismiss stage, the moving party bears the burden of proving that "no legally cognizable claim for relief exists." 5B Wright & Miller's Federal Practice & Procedure § 1357 (4th ed. Apr. 2026).

In its Motion to Dismiss, defendant argues that plaintiffs' characterization of their VWPA and VOWA claims as class actions violates the Rules Enabling Act, as interpreted by the U.S. Supreme Court in Shady Grove Orthopedic Associates, P.A., v. Allstate Insurance Co., 559 U.S. 393 (2010). [Dkt. No. 8] at 7. Specifically, defendant argues that the private right of action provisions in both the VWPA and the VOWA, which permit employees to bring claims "individually, jointly, . . . or on behalf of similarly situated employees as a collective action consistent with the [FLSA]," conflict with and bar the application of Rule 23 in this case. [Dkt.

[2] Defendant's Motion to Dismiss has two different paginations: the ECF page numbers and the page numbers inserted at the center bottom of each page. For consistency, this opinion references the pagination on the bottom-center of each page.

No. 8-1] at 4 (Va. Code Ann. § 40.1-29(K) (2026)); [Dkt. No. 8-3] (Va. Code Ann. § 40.1-29.2 (2026)).

Defendant faces an uphill battle. Judges in this District have rejected the same argument five times in as many years. See Mullin v. Cap. One Servs., LLC, No. 3:24-cv-816, 2025 WL 2772478, at *10 (E.D. Va. Sept. 26, 2025) ("Rule 23 Does Not Violate the Rules Enabling Act" in the context of plaintiffs' VOWA claims); Fierbaugh v. Capital One Servs., LLC, No. 3:24-cv-901, 2025 WL 2617704, at *3 (E.D. Va. Sept. 10, 2025) ("[A]pplying Rule 23 to VOWA claims does not 'abridge, enlarge, or modify any substantive right'") (quoting 28 U.S.C. § 2072(b)); Hatcher v. Cnty. of Hanover, No. 3:23-cv-325, 2024 WL 3357839, at *2-3 (E.D. Va. July 10, 2024) ("Rule 23 does not pose a Rules Enabling Act problem here because the FLSA-procedure language in the VWPA is procedural rather than substantive."); Midkiff v. Anthem Cos., Inc., 748 F. Supp. 3d 376, 387–88 (E.D. Va. 2024) ("Plaintiffs may seek Rule 23 certification for their VOWA claim."); Glennon v. Anheuser-Busch, Inc., No. 4:21-cv-141, 2022 WL 18937383, at *3 (E.D. Va. Sept. 22, 2022) ("[T]he opt-in requirement of the VWPA is procedural, and thus the opt-out mechanism of Rule 23 applies to Plaintiffs' state-law claims.").

Defendant argues that these previous decisions misapplied Justice Stevens' concurrence in Shady Grove, creating an "untenable situation" by which plaintiffs can "circumvent" the structural limitations of the VWPA and the VOWA by pursuing their claims in federal court. [Dkt. No. 8] at 19. In Shady Grove, the plaintiffs in a Rule 23 class action sought to overcome New York's Civil Practice Law and Rules § 901 (2006), which prohibited the use of class actions to enforce any "statute creating or imposing a penalty." 559 U.S. at 396 n.1. A slim majority of the Supreme Court found that Rule 23 applied, despite its apparent conflict with New

York state law, id. at 395; however, they did so for different reasons, resulting in conflicting guidance as to how lower courts should resolve such conflicts.

Both Justice Scalia, who wrote the four-judge plurality decision, and Justice Stevens, in his solo concurrence, offered the same two-step analytic framework: "first, determin[e] whether the federal and state rules can be reconciled . . . and second, if they cannot, determin[e] whether the Federal Rule runs afoul of [the Rules Enabling Act]." Shady Grove, 559 U.S. at 410. The justices agreed that, at step one, "Rule 23 and [N.Y. C.P.L.R.] § 901(b) conflict," id. at 411; however, they departed on how to determine the outcome at step two. To Justice Scalia, the question was whether Rule 23 was a legitimately enacted procedural rule, which then (under the Rules Enabling Act) could be enforced in federal courts despite its conflict with state law. Id. at 407-08. In contrast, Justice Stevens found that the question hinged on whether a federal rule "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id. at 423. Justice Stevens did not lay out a clear test for when state procedural requirements are "so intertwined" with state rights or remedies that they functionally define their scope. Instead, he cited to a few features of the New York law at issue that led him to conclude that, at least on the facts of Shady Grove itself, Rule 23 displaced New York's law. These factors included the legislative history of the state law (including whether it was intended as substantive or procedural), id. at 433, its location (in the state's procedural or substantive code), id. at 436, and its scope (whether it governed only a specific substantive law or all state laws), id. at 432.

In the 16 years since Shady Grove, Justice Stevens's concurrence was generally considered controlling. See, e.g., Blue Cross & Blue Shield of Vermont v. Teva Pharm. Indus., Ltd., 712 F. Supp. 3d 499, 546 (D. Vt. 2024); James River Ins. Co. v. Rapid Funding, LLC, 658

F.3d 1207, 1217 n.2 (10th Cir. 2011); 19 Wright & Miller's Federal Practice & Procedure § 4509 n. 112 (4th ed. Apr. 2026) (collecting cases); but see Grice v. Indep. Bank. 147 F.4th 440, 446 (4th Cir. 2025) (declining to "decide which opinion controls" because "under either [Justice's] approach," Rule 23 applied despite conflicting South Carolina statute which purported to bar class actions between out-of-state parties premised on out-of-state conduct). But in January 2026, Justice Stevens' concurrence appears to have been discredited by the Supreme Court's unanimous opinion in Berk v. Choy, a decision not addressed by either party in this litigation.[3] 607 U.S. 187 (2026). Berk addressed a conflict between the federal civil procedural rule governing pleading standards, Rule 8, and a conflicting Delaware statute, Del. Code, tit. 19, § 6853(a)(1) (2026), which required a plaintiff to attach an "affidavit of merit" signed by a medical professional when filing a medical malpractice suit. Id. at 190-91. In Berk, the district court dismissed the complaint due to the plaintiff's failure to comply with § 6853(a)(1). Id. at 191. Finding that the state law was substantive and did not conflict with the federal procedural rules, the Third Circuit affirmed the dismissal. Id.

The Berk Court held that, where a Federal Rule of Civil Procedure is on point, "state substantive law must yield.'" Id. at 192. In reaching that decision, the Court observed that the Rules Enabling Act "authorizes the Supreme Court to adopt uniform rules of procedure" which "displace[] contrary state law even if the state law would qualify as substantive under Erie's test," unless they "exceed[] statutory authorization or Congress's rulemaking power." Id. In other

---

[3] Although Justice Jackson filed a solo concurrence in Berk, observing in relevant part that Stevens encouraged courts to interpret the Federal Rules "with some degree of 'sensitivity to important state interests and regulatory policies,'" rather than relying solely on "the Federal Rule's plain text," Justice Jackson did not dispute the majority's adoption of Justice Scalia's plurality opinion as controlling. 607 U.S. at 201 n.1 (quoting Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 n.7 (1996)).

words, if "the Federal Rule 'really regulates procedure' . . . it governs." Id. at 198-99 (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)). On this basis, the Supreme Court has "rejected every statutory challenge to a Federal Rule that has come before [it]." Id. at 199. Berk expressly rejected Stevens's argument that "determining whether a Rule is valid under the Rules Enabling Act requires asking . . . whether the displaced state law is substantive." Id. (emphasis in original). Under Berk, "'the substantive nature of [a state] law, or its substantive purpose, makes no difference.'" Id. (emphasis in original) (quoting Shady Grove, 559 U.S. at 409 (Scalia, J.) (plurality opinion)).

The Fourth Circuit has yet to opine on Berk; however, since the decision was issued, district courts in at least six circuits have found that "the test in the Shady Grove plurality opinion, not the test in the Justice Stevens concurrence, controls." McCabe v. Ford Motor Co., No. CV 23-10829, 2026 WL 822262, at *3 (D. Mass. Mar. 25, 2026); see also Suszka v. Univ. of Notre Dame Du Lac, No. 3:25-cv-626, 2026 WL 1469560, at *10 (N.D. Ind. May 26, 2026) ("[R]egardless of whether this argument would have been successful under Justice Stevens' approach in Shady Grove, that line of argument was squarely foreclosed on January 20, 2026, when the Supreme Court decided Berk v. Choy."); see also Rayne Mem'l United Methodist Church v. Church Mut. Ins. Co., S.I., No. CV 23-4129, 2026 WL 2294385, at *10 (E.D. La. Aug. 10, 2026); Smartmatic USA Corp. v. Powell, No. 1:21-cv-2995, 2026 WL 353018, at *4 (D.D.C. Feb. 9, 2026); Resort Assocs., LLC v. United States Liab. Ins. Co., No. CV 25-2011, 2026 WL 1213410, at *3 (D.N.J. May 4, 2026); Rued v. Harris, No. 2:26-cv-1060, 2026 WL 2146986, at *1 (M.D. Fla. July 27, 2026). Because the federal civil rule at issue in Berk — Rule 8 — was procedural, the Supreme Court found that rule superseded Delaware's conflicting pleading-related statute when raised in federal court and reversed the lower courts' decision.

The same outcome is mandated here. Inova invokes Stevens's Shady Grove concurrence and argues that using Rule 23 in this action would permit plaintiffs to "circumvent" the limits laid out in the VWPA and VOWA as to private rights of action and "expand the scope of [those] substantive rights." [Dkt. No. 8] at 7. Under Justice Scalia's plurality opinion, as adopted in Berk, this argument fails. Because "Rule 23—at least insofar as it allows willing plaintiffs to join their separate claims against the same defendants in a class action—falls within [the Rules Enabling Act's] authorization," Shady Grove, 559 U.S. at 410, it "displaces the VOWA, and Plaintiffs may proceed with their VOWA claims as a class action," Mullin, 2025 WL 2772478 at *11 (citing Shady Grove, 559 U.S. at 410).[4]

Inova makes two alternative policy arguments; neither supports defendant's position. First, it argues that the Virginia statutes created a new substantive right that "protect[s] employers from representative liability." [Dkt. No. 8] at 21. Neither the plain language of these statutes nor their history or structure support such a conclusion. The VWPA was amended on July 1, 2020 to create an employee's private right of action and expand the opportunities to seek compensation for underpayment. 2020 Va. Acts 1038; Mullin, 2025 WL 2772478 at *12 ("the substantive 'state right or remedy' bestowed by the VOWA is the right 'to sue individually or jointly for unpaid wages and overtime.'") (quoting Glennon, 2022 WL 18937383, at

---

[4] Justice Scalia's analysis validates both the application of Rule 23's opt-out mechanisms, rather than the opt-in mechanisms of collective actions, and the tolling of class member's claims from the time that the class complaint was filed, rather than requiring each to file within the Virginia statute of limitations. See Mullin, 2025 WL 2772478, at *14 ("The Supreme Court has rejected the proposition that Rule 23 violates the test of Shady Grove on account of its equitable tolling rule.") (citing China Agritech v. Michael H. Resh, 584 U.S. 732, 745–46 (2018)). Plaintiffs' proffered additional authority, Wade v. Danek Med., Inc., 182 F.3d 281 (4th Cir. 1999), does not affect this outcome. See [Dkt. No. 37] at 2 (Defendant's Response to Plaintiffs' Notice of Additional Authority) ("Wade is not dispositive on the question of whether applying Rule 23 would expand the scope of the substantive right to private rights of action created in the Virginia statutes at issue.").

*5). Reading that amendment as instead designed to protect employers from liability, without explicit language or historical text to that effect, would vitiate its express purpose. Defendant's secondary policy argument—that permitting class VWPA and VOWA claims in federal court, while they are prohibited in state court, is "nonsensical," [Dkt. No. 8] at 21-22—fares no better. Because Virginia has no state class action provision, defendant's argument would apply to *any* diversity action founded on Virginia state law and brought in federal court. Defendant's theory would close doors that Congress explicitly opened through the enactment of the Rules Enabling Act, and which the Supreme Court has repeatedly found states cannot close. See, e.g., Shady Grove, 559 U.S. 393.

IV.

For the reasons explained in this Order, it is hereby

ORDERED that defendant Inova's Motion to Dismiss Class Action Allegations, [Dkt. No. 7], be and is DENIED.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 6th day of November, 2026.

Alexandria, Virginia

/s/ LMB
Leonie M. Brinkema
United States District Judge